BOSTON ELEVATED RAILWAY COMPANY *vs.* ARTHUR B. CHAPIN.

Suffolk.   January 13, 1908. — May 22, 1908.

Present: KNOWLTON, C. J., HAMMOND, LORING, SHELDON, & RUGG, JJ.

*Boston Elevated Railway Company.*

By § 13 and § 19 of the charter of the Boston Elevated Railway Company, St. 1894, c. 548, a fund of $500,000 was required to be deposited with the treasurer of the Commonwealth. Section 14 of the charter provides that "the Supreme Judicial Court may at any time, on application of said corporation, when it shall satisfy said court that there is no longer occasion for said fund for the purposes of this act, order the said treasurer to pay the same to said corporation or its assigns." That corporation made an application by petition to the Supreme Judicial Court for an order for such repayment of the fund. The case was reserved by a single justice with a report of his findings of fact for determination by the full court. It appeared that all the lines of railway specified in § 19 and amendments thereto had been built, and that the whole of the fund was held under the provision of § 13 which declares that the deposit "shall be in the hands of said treasurer a fund out of which any execution issued pursuant to the provisions of the preceding section shall be paid by said treasurer." The executions referred to are those for damages to abutters by reason of the construction, maintenance and operation of the elevated railway. *Held,* that the court would not assume that the sole cause of the requirement of the deposit was the uncertainty of the success of the enterprise when the charter was granted in 1894, and that its purpose was not to provide security in the future as well as in the past for the damages caused to abutters by the construction and operation of the elevated railway, and the petition was dismissed, with the suggestion that if this construction of the charter was erroneous relief could be had by application to the Legislature.

LORING, J.   By the charter of the Boston Elevated Railway Company that corporation had to deposit with the treasurer of

the Commonwealth the sum of $500,000 " which," in the words
of § 13 of that charter (St. 1894, c. 548), " shall be in the hands
of said treasurer a fund out of which any execution issued pur-
suant to the provisions of the preceding section shall be paid by
said treasurer."

Executions issued pursuant to the provisions of the preced-
ing section are executions for damages caused to abutters by
the construction and operation of the elevated railway.

By § 19 of the charter three hundred thousand of the five
hundred thousand dollars was pledged to the Commonwealth
(subject to the prior lien for the payment of abutters' damages)
to secure the construction of certain lines of tracks in Boston.
The provisions of § 19 were amended by St. 1897, c. 500, § 22,
and St. 1901, c. 90. The lines of railway specified in § 19
of the charter and in these subsequent acts have been built
and the whole fund is now held by the treasurer for the pur-
poses stated in that part of § 13 of the charter which is quoted
above.

By § 14 of the charter it is provided that : " The Supreme
Judicial Court may at any time, on application of said corpora-
tion, when it shall satisfy said court that there is no longer
occasion for said fund for the purposes of this act, order the said
treasurer to pay the same to said corporation or its assigns."

The petition now before us is a petition under § 14 alleging
that there is no longer occasion for the retention of this fund
by the treasurer, and asking that he be ordered to pay it to the
petitioning corporation.

The case was heard by a single justice and reserved by him for
our consideration.

The facts found at the hearing are substantially these.

The petitioner has paid the claims of about ninety-five per
cent of the abutters on the original route, amounting approxi-
mately to $5,200,000. It also has paid the claims of about
sixty-seven per cent of the abutters on the later extension
from Guild Street to Forest Hills, amounting approximately to
$450,000.

All claims of abutters for damages " have been paid at
once whenever the amount has been determined either by an
amicable agreement of the parties or by trial, and . . . no exe-

cutions to enforce the payment of any such claims have ever been issued."

The petitioner on September 30, 1907, had a surplus over and above its capital stock and indebtedness of substantially $4,700,000. Its capital stock is $13,300,000, it has earned and paid dividends at the rate of six per cent per annum for a number of years, and it is now financially able to pay all claims for abutters' damages, and in all probability will be financially able to do so in the future.

In addition to the construction of its original route and the extension to Forest Hills referred to above, the petitioner is now engaged in the construction (1) of an elevated approach to the Washington Street subway (under St. 1902, c. 534) and (2) an extension of its elevated railway to East Cambridge (under St. 1906, c. 520). In addition it is authorized to construct (1) certain additional elevated railways in connection with its route over Cambridge bridge, (by St. 1906, c. 520,) and (2) an extension of its elevated railway from Sullivan Square to Malden and Everett (by St. 1907, c. 497).

The amount of unsettled claims of abutters under the provisions of the act of 1894, on the line of the original route of the railroad, and of the extensions above referred to, " may exceed five hundred thousand dollars."

The counsel for the petitioner is doubtless right in his assertion that when the charter under which the Boston Elevated Railway Company has since been built was granted to Mr. Meigs and his associates in 1894, the success of the enterprise, or rather of any of the enterprises thereby authorized, was uncertain. But we do not feel that we can take action here on the assumption that the uncertainty of the enterprise was the sole foundation of the creation of this fund, and order it to be paid by the treasurer to the petitioner on the ground that for all practical purposes there is now no uncertainty about the financial status of the railway company.

It had long been the established policy of the Commonwealth (when the charter in question was granted in 1894) to require security, if asked for, to be given for the payment of land damages before a railroad could enter upon land taken by eminent domain. St. 1833, c. 187, § 3. St. 1835, c. 148, § 1. Rev. Sts.

c. 39, § 61. St. 1855, c. 9, § 1. Gen. Sts. c. 63, § 32. St. 1874, c. 372, § 65. Pub. Sts. c. 112, § 97.

More than that, when by St. 1890, c. 368, general authority was given to any railroad or street railway company to "build and use the Meigs system of elevated railway," it was provided in § 2 that this liberty should be subject to the provisions of the Public Statutes as to damages in case of steam railroads (including the section referred to above requiring security to be given if asked for).

We do not feel that we can assume that the Legislature in requiring the creation of this fund of $500,000, did not intend to provide security for the damages caused to abutters by the construction and operation of the elevated railway.

We can hardly accede to the argument of the petitioner's counsel that if this be the true construction of § 13 there was no occasion for the authority given to this court by § 14 to order the same paid over "at any time," on its being satisfied that "there is no longer occasion for said fund."

The possibility of just such extensions as have since been authorized may well have been in the mind of the Legislature. Having in mind such possibilities, and having in mind also that the damages to abutters are caused not all at once but as the construction begins, it may well be that the Legislature thought it fair to the Boston Elevated Railway Company to insert in its charter such a general provision as that set forth in § 14.

If we are wrong in our construction of this charter relief can be readily had upon application to the Legislature.

*Petition dismissed.*

*F. E. Snow*, for the petitioner.

*D. Malone*, Attorney General, & *F. T. Field*, Assistant Attorney General, for the respondent.